The SHARMAN COMPANY, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–108 C.

United States Court of Federal Claims.

Jan. 11, 1994.

Robert E. Steinberg, Washington, DC, attorney of record, for plaintiff.

Shalom Brilliant, with whom were Asst. Atty. Gen. Frank W. Hunger, Director David M. Cohen, Asst. Director Thomas W. Petersen, Dept. of Justice, Washington, DC, and Sandra M. Desbrow, U.S. Marine Corps, for defendant.

POST–REMAND ORDER DIRECTING ENTRY OF JUDGMENT:

(i) AFFIRMING VALIDITY OF DEFAULT TERMINATION

and

(ii) DISMISSING, WITH PREJUDICE, PLAINTIFF'S SECOND AMENDED COMPLAINT

WIESE, Judge.

I

After trial, a judgment was entered in this case on June 12, 1992, dismissing plaintiff's first amended complaint for failure of proof and granting defendant's counterclaim for $1.4 million in unliquidated progress payments. Jurisdiction was based on (i) a final decision of the contracting officer terminating plaintiff's contract for default, and (ii) a subsequent demand by the contracting officer for repayment of progress payments. Taken together, these two actions of the contracting officer were seen by this court to be sufficient to satisfy then-existing jurisdictional requirements for the exercise of our authority under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1988 & Supp. IV 1992), namely, that the suit involve a claim to money presently due brought here after a final decision of the contracting officer.

An appeal was taken. On August 17, 1993, the court of appeals issued a decision vacating the judgment for lack of jurisdiction. The court of appeals ruled that the Government's demand for return of progress payments involved a separate contract event, distinct from the default termination, and, hence, could not be aired in this court in the absence of a separate contracting officer's final decision. "There is no authority," said the court of appeals, "that supports the combining of two separate letters from the contracting officer, one constituting a final decision on a default termination ... and the other demanding a specific amount ... to create a final decision on a monetary claim." 2 F.3d 1564, 1570–71 (1993).

Although the adjudication of the Government's demand for return of progress payments could not be upheld (for lack of a contracting officer's final decision), no such impediment existed in regard to an adjudication of the contractor's challenge to the Government's default termination. The court of appeals pointed out that amendments to the Tucker Act, 28 U.S.C. § 1491 (1988 & Supp. IV 1992), enacted after the decision on appeal was issued, granted the Court of Federal Claims jurisdiction, retroactively, to decide non-monetary disputes (e.g., contractor challenges to default terminations) on which a contracting officer's final decision had been entered. "This new jurisdiction applies retroactively to actions that were still awaiting final judgment upon enactment, as this one was." [1] 2 F.3d at 1572. Based on this en-

---

**1.** The reference here is to section 907(b)(1) of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4516, 4519. That section amended 28 U.S.C. § 1491(a)(2) to read as follows:

The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, *including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that*

largement of jurisdiction, and in light of its decision reversing the money judgment in favor of the Government, the court of appeals concluded that the contractor's challenge to the Government's default termination was not moot and should therefore be remanded for decision. Accordingly, the case was returned to this court with an instruction to decide "the default termination challenge in the contractor's original complaint." *Id.* at 1573.

## II

No sooner was the case restored to this court's docket, then the parties were once again caught up in a procedural wrangle. This time, however, the issue is not whether the court has jurisdiction to test the correctness of the contracting officer's default termination. Rather, the principal question now is whether this court may decide the issue of the validity of the default termination on the basis of the existing trial record or must provide plaintiff an opportunity to supplement that record.[2]

The arguments on this issue, which are before us now as part of defendant's motion to dismiss plaintiff's second amended complaint, go like this: The Government contends that entry of judgment in its favor is appropriate because the earlier trial, though nominally directed towards resolution of the Government's money demand (the return of progress payments) was, in reality, a test of the legitimacy of the default termination. Moreover, the Government adds, plaintiff was given every opportunity to put on all of its evidence at that time, and, most impor-

tantly, had every incentive to do so. According to the Government, plaintiff well understood that trial of the Government's demand for return of progress payments necessarily brought into issue precisely the same facts and law that would arise in a trial testing only the correctness of a default termination. Thus, from the Government's point of view, the default termination issue has been fully and fairly tried.

Plaintiff responds by saying that the remand to this court would be pointless if all that was intended was simply the performance of an administrative function, *i.e.*, pronouncement of a decision upholding the default termination. Plaintiff notes that that task is one the court of appeals could readily have accomplished on its own. Therefore, according to plaintiff, what prompted the remand—and what now justifies its claimed right to supplement the trial record—is the fact that that record was compiled at a time when this court was without jurisdiction to entertain the matter in suit. Plaintiff expresses it this way: "Because the appellate court determined that this Court did not have jurisdiction over this matter at the time of trial and issuance of its decision, this Court must provide plaintiff with the opportunity to be heard." To plaintiff, then, the existing trial record may be relied on only to the extent the parties have actually agreed to do so. But, absent such agreement, plaintiff insists that it has a right to put on new evidence.

## III

■ The court does not agree with the contention that plaintiff is entitled, as a mat-

---

*Act.* [underscoring denotes amending language]
Retroactivity of the foregoing jurisdictional amendment was provided by section 907(b)(2) of the Act. That section reads as follows:
(2) The amendment made by paragraph (1) shall be effective with respect to all actions filed before, on, or after the date of the enactment of this Act, except for those actions which, before such date of enactment, have been the subject of—
(A) a final judgment of the United States Claims Court, if the time for appeal of that judgment has expired without an appeal having been filed, or
(B) a final judgment of the Court of Appeals for the Federal Circuit.

*Id.* at 4519.

2. The problem is presented to us in the context of a second amended complaint, filed on September 23, 1993, and a motion for summary judgment, titled "Plaintiff's Motion For Summary Judgment With Respect To Liability Or Reconsideration Of Validity Of Default Terminations," filed on November 16, 1993. In the second amended complaint, Sharman reasserts its original request for a declaratory judgment holding the Government's default termination unlawful; the motion for summary judgment is directed to the same end. Defendant has filed a motion to dismiss the second amended complaint.

ter of right, to offer further evidence in support of its attack on the default termination. That argument could prevail only if the want of jurisdiction that existed at the outset had not been retroactively remedied. Under those circumstances, the lack of authority in the court would indeed render it powerless to make any binding determinations, of fact or law, on the evidence initially presented. When jurisdiction is lacking "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868).

■ That is not our case, however. As the court of appeals pointed out, the initial lack of jurisdiction in this court to entertain a non-monetary claim was addressed by legislative changes to the Tucker Act, enacted as part of the Federal Courts Administration Act of 1992, specifically granting such authority "with respect to all actions filed before, on, or after the date of the enactment of this Act" in which a final judgment had not yet been entered.[3] Since final judgment had not been entered in this case on the date of enactment of the Act, the retroactive enlargement of jurisdiction applies foursquare to this case. By this legislation then, the Court of Federal Claims became vested with full power to address the root issue that has been present in this case from the start— whether the Government's default termination of plaintiff's contract was a contractually valid step.

Hence, the question here is not whether plaintiff has the right to ignore the prior proceedings in favor of seeking a different result on the basis of new evidence. Rather, the real question is whether there is any reason to assume that the existing evidentiary record was compiled without full appreciation on plaintiff's part that the ultimate question being tested was the legality of the default termination. The answer to that question is no.

To explain: The facts in this case show that, because of severe financial hardship brought on by unanticipated increases in the price of foreign steel (the steel required for the contract), the contractor was unable to continue work and therefore repudiated the contract. This, in turn, prompted the Government's default termination and also its subsequent demand for return of unliquidated progress payments.

At trial, the core dispute—the factual proposition to which all the testimony was directed—was Sharman's contention that prolongation of the base contract work beyond its anticipated completion date, and into a period of high steel prices, was the result of Government-caused delays. Underlying this proposition was the legal argument that Sharman's abandonment of the work was excusable—and, implicitly, the Government's default termination improper—because market risks associated with Government-caused delays are not included in the risks assumed by a fixed-price contractor.

Following a full and complete trial of the issue (the trial took place over an eight-day period) the proceedings were adjourned to give the court an opportunity to review the evidence and prepare its ruling. One week later, on June 11, 1992, proceedings were reconvened and the court announced its opinion from the bench.[4] That opinion concludes that the Government was responsible for (i) a 60–day delay in approval of the First Article Inspection Report (the last documentary approval required before production could begin), and (ii) a 23–day delay during manufacture of the contract's "First Article" (the first step in the production-qualifying process). Neither of these delays, however, was found to be material. That is to say, even if they had not occurred, the contractor would not have been ready to proceed with production sooner than mid-January 1988—a date too late to have avoided the sharp increases in the price of steel that began in the fall of 1987. The court therefore concluded that "the Government's delay cannot be considered the source of the contractor's injuries." Bench op. at 33. Consistent with this conclusion, the court ruled that the Government was entitled to recover on its counterclaim.

3. *See supra* note 1.

4. The bench opinion appears at pages 10–37 of the transcript of proceedings of June 11, 1992 (filed June 15, 1992).

As the foregoing demonstrates, Government-caused delay and excusability of the contractor's abandonment of performance were the central concerns of the trial. Resolution of these issues, as the parties well understood, was the analytical equivalent of determining whether the Government's default termination was legally correct. Thus, in reality, the default issue has already been decided.

The court of appeals took a different view of the matter. "The merits of Sharman's default termination cause of action," said the court, "were clearly never decided by the Claims Court." 2 F.3d at 1572 n. 11. The foundation for this statement is the court of appeals' belief that jurisdiction in this court rested on the Government's claim for return of progress payments rather than the Government's claim asserting rights under the default clause. Based on that orientation, the court of appeals concluded that the default termination question was before the court only "as an issue" relating to the Government's money claim "but not as an independent claim, *i.e.*, a separate cause of action." *Id.* at 1567.

Thus, as the court of appeals saw the matter, for jurisdictional purposes, resolution of a contractor's challenge to a default termination as an issue in a case was distinct from resolution of the same question when presented as an independent claim. Under the Contract Disputes Act, jurisdiction is tied to the resolution of a claim.

Accepting, as we must, this view of the matter, but recognizing at the same time that the proof necessary to prevail on the question would be the same in either situation, no reason now presents itself to reopen the trial record to allow additional proof. That the earlier proof was directed towards default as an issue, as opposed to default as a claim, does not diminish its probative worth nor justify its supplementation. This contractor was given every opportunity the first time around to show that the default termination was improper and, indeed, it used that opportunity to the fullest. The point is not disputed. Accordingly, it is appropriate that this court now declare, on the basis of the facts presented at trial and the law applicable thereto, and without considering further evidence, that the Government acted within its rights in terminating for default its contract with The Sharman Company.

In addition to the default termination issue, there are some other matters that need to be addressed. As previously explained (*supra* note 2), Sharman filed a second amended complaint on September 23, 1993. In that complaint, Sharman asks for relief in addition to its request for a declaration of invalidity in respect to the default termination. Specifically, Sharman asks for (i) an award of convenience termination damages or, in the alternative, an award measured by the value of the goods and services received by the Government, (ii) a declaration that the Government's demand for progress payments is improper, and (iii) an award of attorneys' fees and costs. The Government asks that we dismiss these demands for, among other reasons, lack of jurisdiction.

We think it is enough to say that none of these further demands of the plaintiff can logically succeed in the face of a determination that the Government's default termination was factually and legally correct. On that ground, then, we grant the motion to dismiss.

## IV

For the reasons set forth in this Order, the Clerk shall enter a judgment (i) affirming the validity of the Government's default termination of plaintiff's contract, and (ii) dismissing the entirety of plaintiff's second amended complaint for failure to state claims upon which relief can be granted. Each party shall bear its own costs.