**Damacio HERNANDEZ, Jr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–708C.**

United States Court of Federal Claims.

July 30, 1997.

---

David L. Ganezer, Ganezer Law Firm, Santa Monica, CA, for plaintiff.

Matthew S. Bode, Washington, DC, with whom was James M. Kinsella, Assistant Director, David M. Cohen, Director, and Frank W. Hunger, Assistant Attorney General (David L. Hayden, of counsel), for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction as well as a motion for judgment upon the administrative record. For the reasons set forth below, the court grants defendant's motion to dismiss for lack of subject matter jurisdiction and therefore does not reach the issue of judgment upon

the administrative record. In light of this decision, defendant's objection to plaintiff's request for judicial notice, or in the alternative defendant's motion for leave to reply to plaintiff's request for judicial notice, filed May 13, 1997, is moot. Oral argument is not deemed necessary.

## FACTS

In December 1982, plaintiff, Damacio Hernandez, Jr., was appointed to the rank of First Lieutenant in the Medical Service Corps of the United States Army Reserve. Approximately one year later, Hernandez was promoted to captain. On May 5, 1987, Hernandez was assigned to the Active Guard Reserve ("AGR") program for a three-year commitment. In January 1990, the AGR Accession and Continuation Board ("ACB") convened to consider whether Hernandez's active duty status would be renewed following his initial three-year term. The ACB decided against renewing Hernandez to active duty status and slotted him for release from the AGR program. The decision was based upon a review of plaintiff's records, including two Officer Evaluation Reports (OER) and a Memorandum of Reprimand (MOR), both discussed below. He was released in June 1990; however, the Army Reserves allowed him to continue on active duty until November 1990 in order to continue receiving compensation and benefits for injuries he had received while on active duty.

Hernandez alleges that the ACB's decision not to select him for continuation in the AGR program was based on the retaliatory and discriminatory acts of his superior officer, Colonel Ralph Erdmann. In 1988, Hernandez filed complaints with the 807th Medical Brigade and the 5th Army Inspector General accusing Erdmann of unethical behavior. During subsequent criminal proceedings in Texas, Erdmann was convicted of, among other things, tampering with autopsy results so as to obtain convictions against innocent personnel, as well as falsifying pay records to get paid double compensation.

Plaintiff claims the retaliation began in 1988 when his rater was ordered by Erdmann to rewrite an OER, casting Hernandez in an unfavorable light. Likewise, in 1989, plaintiff claims Erdmann exerted pressure on his rater to write another poor OER. In June 1989, Hernandez requested a commander's inquiry into the fairness of his first OER. Subsequently, both OERs were voided and replaced with new OERs. Hernandez then appealed to an Officer Special Review Board ("OSRB") to review his new OERs in an attempt to overturn the ACB's decision not to continue him in the AGR program. On June 7, 1990, the OSRB found that Hernandez failed to provide clear and convincing evidence that the OERs were inaccurate or unjust, or violated a regulation, and therefore upheld the decision of the ACB.

Finally, Hernandez appealed on two occasions to the Army Board for the Correction of Military Records ("ABCMR") for review of his OERs and his MOR. The MOR was issued in 1987 when Hernandez refused to take an alcohol breath test when pulled over for DWI.[1] Plaintiff claims he refused because Erdmann had a history of cooperating with the police to fabricate evidence in order to incriminate innocent people and feared his test results would be tampered with. Therefore, he argued that the MOR placed in his file as a result of refusing the breath test should have been discounted by the review boards. Hernandez also alleged that Erdmann, acting in retaliation, exerted pressure on his rater which resulted in his low OERs. He claimed that these actions violated 10 U.S.C. § 1034, hereinafter the Military Whistleblower Protection statute, which provides: "[n]o person may take (or threaten to take) an unfavorable personnel action, or withhold (or threaten to withhold) a favorable personnel action, as a reprisal against a member of the armed forces for making or preparing— (A) a communication to ... an Inspector General." 10 U.S.C. § 1034(b) (1994). On July 22 and September 23, 1992, the ABCMR concluded there was insufficient evidence present in both appeals to demonstrate the existence of probable error or injustice in

---

**1.** Military regulations require submitting to a breath test when there is a reasonable belief that the member is driving under the influence of drugs or alcohol. Army Regulation 190–5, *Motor Vehicle Traffic Supervision* Chap. 2–7(a) (July 8, 1988).

regard to the MOR and OERs. Therefore, his appeals to the ABCMR were both rejected and his request for relief was denied.

On October 26, 1995, Hernandez filed suit in this court seeking injunctive relief, reinstatement to active duty, and back pay. Plaintiff relies on 10 U.S.C. § 1034, the Military Whistleblower Protection statute, and Department of Defense (DOD) Directive 7050.6 which embodies a detailed description of the administrative policies and procedures established in section 1034 for jurisdiction. He also relies on 10 U.S.C. § 1552, the statute for the correction of military records, and the Administrative Procedure Act, 5 U.S.C. § 702. Finally, plaintiff bases jurisdiction on the existence of a federal question pursuant to 28 U.S.C. § 1331. Defendant moved to dismiss the claim due to this court's lack of subject matter jurisdiction or, in the alternative, claims entitlement to judgment upon the administrative record.

## DISCUSSION

■ Congress defined the jurisdiction of this court in the Tucker Act, which states that:

[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (1994). However, the Tucker Act is only a jurisdictional statute; it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Therefore, plaintiff must base his claim on a substantive right that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983) (citing *United States v.*

*Testan,* 424 U.S. at 400, 96 S.Ct. at 954). However, if a statute "merely permit[s] discretionary payment, [it] cannot form the basis for jurisdiction in this court." *Sanford v. United States,* 32 Fed.Cl. 363, 365 (1994) (citing *Adair v. United States,* 227 Ct.Cl. 345, 648 F.2d 1318 (1981)).

In the instant case, plaintiff seeks to obtain jurisdiction though four distinct statutes. The first is the Military Whistleblower Protection statute, 10 U.S.C. § 1034, in conjunction with DOD Directive 7050.6. The second jurisdictional claim is based on 10 U.S.C. § 1552, the statute for the correction of military records. Thirdly, plaintiff relies on 5 U.S.C. § 702, the Administrative Procedure Act, and lastly, plaintiff claims federal question jurisdiction, 28 U.S.C. § 1331. Defendant argues that none of these statutes confer jurisdiction on this court and plaintiff has established no right to payment sufficient to invoke Tucker Act jurisdiction.

I. Jurisdiction under the Military Whistleblower Protection Statute, 10 U.S.C. § 1034

■ Plaintiff claims that this court has jurisdiction under the Military Whistleblower Protection statute. 10 U.S.C. § 1034. Jurisdiction based on this statute is one of first impression for the Court of Federal Claims.[2] The purpose of the statute is to provide a degree of protection to military personnel who report information on improper or illegal activities by other military personnel. In order to protect the communications of military personnel who provide such information, the statute provides for investigative and administrative remedies for alleged retaliatory actions. The first step involves submitting an allegation that prohibited retaliatory action has been taken to the Inspector General of the Department of Defense. 10 U.S.C. § 1034(c). The Inspector General, or an inspector general of one of the armed forces, is then charged with investigating the allegations of prohibited personnel actions in violation of the statute. *Id.* In addition, the Board for the Correction of Military Records is charged with reviewing applications for the

---

**2.** Only two courts have addressed this issue. The Eighth Circuit decided a case in 1995 and the Eastern District of Pennsylvania decided a case this year. These cases are discussed below.

correction of records made by persons complaining that a prohibited retaliatory action was taken against them. 10 U.S.C. § 1034(f). This includes the possibility of holding an administrative hearing to look into the charges. 10 U.S.C. § 1034(f)(3). The Board may recommend to the Secretary appropriate disciplinary action against the individual committing the prohibited act. 10 U.S.C. § 1034(f)(6). The appropriate Secretary must issue a final decision within 180 days of the application for relief. 10 U.S.C. § 1034(f)(4). This decision is directed to include "such action ... as is necessary to correct the record of a personnel action prohibited by [the Act]." 10 U.S.C. § 1034(f)(5). If no such decision is issued, administrative remedies are deemed exhausted. 10 U.S.C. § 1034(f)(4). Finally, after "the completion of all *administrative* review under subsection (f), the member ..., if not satisfied with the disposition of the matter, may submit the matter to the Secretary of. Defense." 10 U.S.C. § 1034(g) (emphasis added). The Secretary of Defense must reverse or uphold the decision within 90 days after receiving such a submittal. *Id.*

■ Congress designed the Military Whistleblower Protection statute to provide channels within the military through which members of the armed forces · could bring their grievances. Thus, the statute provides an administrative process for handling complaints of improper retaliatory personnel actions. Accordingly, the Eighth Circuit found that section 1034 provides strictly administrative remedies and therefore does not afford plaintiffs a private cause of action. *Acquisto v. United States,* 70 F.3d 1010, 1011 (8th Cir.1995). The only other court to address the issue chose to follow the Eighth Circuit. *Alasevich v. United States Air Force Reserve,* 1997 WL 152816, 6 (E.D.Pa. 1997). After close examination of the statute's procedures and legislative history, the court agrees with *Acquisto's* sound reasoning that the statute affords members of the armed forces solely administrative remedies. Therefore, plaintiff cannot file a claim in this court under the Military Whistleblower Protection statute, as no private cause of action exists.

■ However, even if the Military Whistleblower Protection statute gave rise to a cause of action, it must be money-mandating for plaintiff to obtain jurisdiction in the court. Plaintiff claims that 10 U.S.C. § 1034 is a money-mandating statute. The Military Whistleblower Protection statute is designed to prevent retaliatory action and allows for remedial measures when such action occurs. Plaintiff maintains that but for the retaliatory actions taken against him, he would have had a right to continue in the AGR program and therefore, receive compensation. Thus, he argues the statute mandates a remedy through his receipt of compensation and his reinstatement to rank. In essence, he contends that he has a right to money because the statute was violated.

There are several problems with plaintiff's assertion. First, section 1034 says nothing that can be construed as a guarantee to money, it merely provides for "such action ... as is necessary to correct the record of a personnel action prohibited by [the statute]." 10 U.S.C. § 1034(f)(5). Thus, the language of the statute does not mandate paying a complainant monetary damages. Second, contrary to plaintiff's assertion, he had no legal right to continue in the AGR program at the end of his three-year tour. Plaintiff claims that his extension on active duty created a right to continue in the AGR program. The court does not agree. The present case is similar to *McEniry v. United States,* 7 Cl.Ct. 622, *aff'd,* 785 F.2d 323 (Fed.Cir.1985), which recognized that "an enlisted man has no right to reenlist when his previous enlistment period ends unless a statute creates such a right to reenlist." *Id.* at 626 (citing *Thompson v. United States,* 221 Ct.Cl. 983 (1979)); *Austin v. United States,* 206 Ct.Cl. 719, 723 (1975), *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). Plaintiff's extension resulted from injuries plaintiff received while on active duty. It does not appear that there was any intent to reenlist plaintiff. The extension was merely additional time added to his previous enlistment period in order to allow plaintiff to receive full compensation for injuries received while on active duty. Thus, lacking a legal right to reenlist, it follows that plaintiff's right to pay

terminated at the expiration of his enlistment period. *Austin v. United States*, 206 Ct.Cl. at 723.

Finally, plaintiff claims that the definition of corrective action found in DOD Directive 7050.6, Military Whistleblower Protection, turns section 1034 into a money-mandating statute. The Directive defines corrective action as "[a]ny action deemed necessary to make the complainant whole." DOD Directive 7050.6, encl. 1–1 (Nov. 20, 1989). Therefore, plaintiff maintains that section 1034 is money-mandating because he needs a monetary award to become whole again. The court does not agree. The determination of which actions are "necessary" is merely discretionary; no actual mandate of money is spelled out in the Directive. As previously stated, a statute that permits only discretionary payment cannot form the basis for jurisdiction in the Court of Federal Claims. *Sanford v. United States*, 32 Fed.Cl. at 365.

Overall, section 1034, in conjunction with DOD Directive 7050.6, does not invoke Tucker Act jurisdiction. Plaintiff failed to establish that the statute mandates an unconditional right to a monetary award.

## II. Jurisdiction under the Statute for the Correction of Military Records, 10 U.S.C. § 1552

 The secretary of each military department possesses the authority to correct records of military personnel in cases of injustice or error pursuant to 10 U.S.C. § 1552. If, as a result of correcting military records, money is found to be due the claimant, the statute provides that the secretary "may pay" that amount. 10 U.S.C. § 1552(c) (1994). Plaintiff claims this creates a monetary entitlement. The court does not agree. The Federal Circuit's decision in *Dehne* stated that "by its terms, section 1552(c) does not mandate pay at all. Rather, it provides for appropriate discretionary payment by the Secretary in certain circumstances." *Dehne v. United States*, 970 F.2d 890, 894 (Fed.Cir. 1992). An exception to this rule exists only "if the Secretary makes a correction to military records and then fails to pay plaintiff the relief that has become due as a result of the correction." *Ewing v. United States*, 36

Fed.Cl. 159, 163 (1996) (citing *Sanford v. United States*, 32 Fed.Cl. at 363). Therefore, section 1552 is not a money-mandating statute absent a previous correction by the military. In the instant case, the ABCMR made no correction to plaintiff's records, therefore, he cannot draw upon 10 U.S.C. § 1552 to base his Tucker Act claim in this court.

## III. Jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 702

 Plaintiff claims that this court has jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. However, section 702, setting forth the "right of review," does not inherently confer jurisdiction on this court. Section 702 "waives sovereign immunity to allow a person who is legally wronged by an agency action within the meaning of a relevant statute, to obtain judicial review of that action when money damages are not involved." *Martinez v. United States*, 26 Cl.Ct. 1471, 1476 (1992) (citing 5 U.S.C. § 702), *aff'd*, 11 F.3d 1069 (Fed.Cir. 1993). The waiver applies "only for claims seeking 'relief other than money damages.'" *Mitchell v. United States*, 930 F.2d 893, 895 (Fed.Cir.1991) (quoting 5 U.S.C. § 702 (1970)). As noted by the Federal Circuit, "clear precedent exists that the APA is not a jurisdictional statute and does not confer jurisdiction on a court not already possessing it." *National Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1559 (Fed.Cir.1988) (quoting *American Air Parcel Forwarding Co., Ltd. v. United States*, 718 F.2d 1546, 1552 (Fed. Cir.1983), *cert. denied*, 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984)). The APA does not mandate the award of money damages. As a result, the Tucker Act's money-mandating requirement for jurisdiction cannot be satisfied. Thus, plaintiff cannot base this court's jurisdiction on the APA.

## IV. Federal Question Jurisdiction, pursuant to 28 U.S.C. § 1331

 Plaintiff erred when claiming federal question jurisdiction, pursuant to 28 U.S.C. § 1331, grants this court jurisdiction. The Court of Federal Claims does not possess federal question jurisdiction. Section 1331 provides that "[t]he district courts shall

have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1994). Because the Court of Federal Claims is not a district court, this court cannot rely on federal question jurisdiction. In addition, section 1331 is merely a jurisdictional statute that "do[es] not create any substantive right enforceable against the United States for money damages." *DeVilbiss v. Small Business Administration*, 661 F.2d 716, 718 (8th Cir.1981) (citing *United States v. Testan*, 424 U.S. at 400–02, 96 S.Ct. at 954–55). As a result, section 1331 cannot satisfy the Court of Federal Claims money-mandating requirement for jurisdiction. Therefore, plaintiff cannot use section 1331 to create jurisdiction in this court.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1) and (4) is granted. Since plaintiff was unable to ground his claim on a statute mandating a right to recovery of monetary damages, plaintiff failed to establish jurisdiction in this court. Plaintiff's case is therefore dismissed.

**IT IS SO ORDERED.**