RAMCOR SERVICES GROUP, INC., Plaintiff,

v.

THE UNITED STATES, Defendant.

No. 98–152C.

United States Court of Federal Claims.

June 24, 1998.

---

Michael A. Gordon, Rockville, MD, for plaintiff.

Sean C. Griffin, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## OPINION

MILLER, Judge.

This matter is before the court on plaintiff's application for an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412 (1994), *as amended by* 28 U.S.C.A. § 2412 (West Supp.1998). Two issues to be decided are 1) whether the court has jurisdiction over the underlying dispute; and 2) if jurisdiction exists, whether defendant's position was substantially justified.

## FACTS

Because the facts underlying this dispute are set forth in the court's order granting the request for a preliminary injunction sought by Ramcor Services Group, Inc. ("plaintiff"), *see Ramcor Services Group, Inc. v. United States,* No. 98–152C (Fed.Cl. Mar. 9, 1998) (unpubl.), this opinion sets forth only those facts pertinent to plaintiff's application for an EAJA award. In its March 9 order, the court ruled that plaintiff was entitled to a preliminary injunction preventing the Immigration and Naturalization Service (the "INS") from awarding a contract to perform base support services at the United States Border Patrol Satellite Academy in Charleston, South Carolina (the "BPSA").

To place plaintiff's application in context, the court summarizes the process underlying a pre-award bid protest before the General Accounting Office (the "GAO") and the manner in which the instant dispute arose subsequent to such a protest. When a pre-award bid protest is filed, the GAO issues an automatic stay that prevents the subject agency from awarding the contract at issue while the protest is pending. When faced with a GAO

stay, the agency is not without recourse. Pursuant to 31 U.S.C. § 3553(c) (1994), the agency can override a GAO stay if there are "urgent and compelling" circumstances supporting such a decision. In order to override a stay, the agency is required to issue a written finding detailing the requisite urgent and compelling reasons necessary.

In the case at bar, the INS availed itself of the override provisions and awarded the base support services contract to an offeror other than plaintiff.[1] Faced with this situation, plaintiff applied for a preliminary injunction in the United States Court of Federal Claims seeking to enjoin the INS from awarding the contract until after the GAO had rendered its decision. In granting plaintiff's application, the court delimited the ground on which the preliminary injunction issued to the INS' inability to justify the urgent and compelling circumstances necessary to override a GAO stay.

Having failed to persuade the court that the INS' decision to override the GAO stay was supported by urgent and compelling need, defendant filed an after-the-fact motion for reconsideration and motion to dismiss. The gravamen of this combined motion was that the Court of Federal Claims lacks jurisdiction to entertain a suit based on the override of a GAO stay. After the jurisdictional motion had been fully briefed and argued, but before the court decided the matter, the GAO issued its decision, adverse to plaintiff, on March 23, 1998. The court subsequently lifted the injunction, denied defendant's jurisdictional motion as moot, and dismissed the action. Plaintiff then filed its application pursuant to the EAJA seeking recovery of attorneys' fees and expenses associated with both its efforts to obtain a preliminary injunction and to address defendant's motion for reconsideration.

## DISCUSSION

1. Whether the amended Tucker Act, 28 U.S.C.A. § 1491(b) (West Supp.1998), grants the Court of Federal Claims jurisdiction to entertain challenges to an agency override of a GAO stay will have serious repercussions for all entities involved in the federal procurement process. However, the matter is not before the court on the merits, but instead arises as a collateral component of an EAJA application seeking reimbursement of attorneys' fees and expenses with respect to a case already dismissed as moot. This case exemplifies the Supreme Court's teaching that fee petitions should not "result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Here the court is asked to decide a jurisdictional issue of first impression in the context of an EAJA application, when the jurisdictional issue has nothing to do with the EAJA. Thus, in order to address plaintiff's application on the merits, the court must cross a jurisdictional Rubicon.

For these reasons the court had intended to apply the principle of hypothetical jurisdiction and decide this case without addressing the jurisdictional question. *See, e.g., Decker & Co. v. West*, 76 F.3d 1573, 1584 (Fed.Cir. 1996) ("[W]hen resolution of the contested jurisdiction will entail expenditure of significant judicial resources to no avail, it is not inappropriate for an appellate court to simply assume that the losing party would succeed in establishing the contested jurisdiction, and to terminate the litigation on the merits."). If ever a case warranted such extraordinary measures, it is the case at bar. However, the Supreme Court has recently rejected the principle of hypothetical jurisdiction, *see Steel Co. v. Citizens for a Better Environment*, —— U.S. ——, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998), thereby requiring the court to address an important jurisdictional question in the context of a scenario in which "neither of the parties acquitted themselves with pure grace." *Decker*, 76 F.3d at 1575.

▆▆ Jurisdiction in the Court of Federal Claims is limited by the extent to which the Government has waived its sovereign immunity. *See United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). When the court's jurisdiction is at issue, plaintiff bears the burden of establish-

---

1. The INS awarded the base support services contract to another offeror on February 23,

1998. The written finding was not approved, however, until February 25, 1998.

ing, by a preponderance of the evidence, that its complaint is properly before the court. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). If plaintiff cannot meet this burden, the court is required to dismiss the complaint. *See Sharman Co. v. United States*, 30 Fed.Cl. 231, 234, *aff'd*, 41 F.3d 1520 (Fed.Cir.1994).

■ The Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, § 12, 110 Stat. 3870, 3874–75 (1996) (the "ADRA"), repealed section 1491(a)(3) and replaced it with amended section 1491(b) (codified at 28 U.S.C.A. § 1491(b) (West Supp.1998)). In the instant case, the court's jurisdiction turns on the construction of 28 U.S.C.A. § 1491(b), which provides, in pertinent part:

(b)(1) Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . .

(2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

(These two provisions will be referred to as the "1996 Tucker Act amendments" or "amended section 1491(b).") Specifically, the court is called on to construe the breadth of the final disjunctive phrase of section 1491(b) that permits the court to entertain suits based on a "violation of statute or regulation in connection with a procurement or a proposed procurement."

In its motion to dismiss, defendant urges that, despite the language of the final disjunctive phrase, the 1996 Tucker Act amendments do not expand the court's jurisdiction beyond bid protests. Defendant posits that the only manner in which the amended Tucker Act expands the Court of Federal Claims' jurisdiction is by permitting the court to entertain post-award, as well as pre-award,

bid protests. Defendant characterizes the relief sought by plaintiff as nothing more than an attempt to receive equitable relief from wrongful agency conduct pursuant to the Administrative Procedures Act (the "APA"), which defendant correctly argues this court does not possess the authority to grant. *See Hernandez v. United States*, 38 Fed.Cl. 532, 537 (1997); *Siegal v. United States*, 38 Fed.Cl. 386, 389 (1997); *Crocker v. United States*, 37 Fed.Cl. 191, 197, *aff'd*, 125 F.3d 1475 (Fed.Cir.1997).

Although the court recognizes plaintiff's position that it is challenging the award of the successor contract to another offeror, this line of reasoning lacks merit. At the hearing addressing the issuance of a preliminary injunction, the court stated that such an order would issue, if at all, because of the INS' inability to justify its decision to override the GAO stay. Subsumed within this procedural posture was the corollary that the court was not considering the underlying merits of the dispute. Therefore, if plaintiff had wanted to challenge the propriety of the award of the successor contract, it could have done so simply by amending its complaint to conform to a typical post-award bid protest. Plaintiff made a strategic decision not to adopt such a course of action because doing so would have resulted in the dismissal of its then-pending GAO protest. Having failed to challenge the award of the successor contract on the merits, plaintiff cannot attempt to establish jurisdiction by asserting that its action in the Court of Federal Claims was tantamount to a standard post-award bid protest.

Moreover, the court notes that as a practical matter, two separate actions have aggrieved plaintiff. First, the INS opted to override the GAO stay of performance that issues as a matter of course during the pendency of a pre-award bid protest. Second, the INS actually awarded the successor contract to an offeror other than plaintiff. Without the first action, the second would not have occurred. It is the first action that plaintiff challenged in the Court of Federal Claims, and it is that action to which the court limited its review.

Were the court to accept plaintiff's contention that it is merely seeking to challenge an illegal award, the court would be faced with an additional problem. Both parties assert that the crux of this dispute is the breadth of section 1491(b). However. following plaintiff's reasoning to its logical terminus would lead to a conclusion that the 1996 Tucker Act amendments play no role. For example, assume that plaintiff has been excluded from the competitive range for the base support services contract and has filed a protest with the GAO. Assume further that, upon learning of the INS' decision to override the GAO stay and award the contract, plaintiff is able to obtain a court hearing before the INS can act. Under these circumstances plaintiff apparently would argue that the court would possess jurisdiction to entertain its request for injunctive relief because a contract had yet to be awarded.[2] However, the court's research indicates that in 16 years since the court was authorized to grant pre-award injunctive relief, neither the Court of Federal Claims nor its predecessor courts ever decided the merits of an agency decision to override a GAO stay. Although this fact is certainly not dispositive, it does suggest that prior to the 1996 Tucker Act amendments litigants have not considered the Court of Federal Claims as a forum for this type of action.

Prior to the 1996 Tucker Act amendments, the Court of Federal Claims, as well as its predecessor courts, found jurisdiction over procurement disputes by virtue of a fictional implied-in-fact contract requiring the Government to consider an offeror's bid in a fair and honest manner. *See United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1367 (Fed.Cir.1983) (en banc). The 1996 Tucker Act amendments obviate such a requirement. The 1996 amendments enable the court to consider both pre and post-award actions and in doing so apply the standard of review set forth in the APA. 28 U.S.C. §§ 1491(b)(1), (4).

Unfortunately, the statute is unclear regarding the breadth of the court's expanded

jurisdiction. At argument defendant suggested that the statute's direction to apply—under the appropriate circumstances—an APA standard of review does not equate to an ability to decide the whole host of disputes falling under the rubric of the APA. The court agrees: The amended Tucker Act directs the Court of Federal Claims to use the APA standards of review as decisional tools. Moreover, it is well-settled that the APA does not provide an independent grant of jurisdiction. The district courts conversely derive their jurisdiction over APA cases by virtue of their general federal question jurisdiction. *See* 28 U.S.C. § 1331 (1994). The Court of Federal Claims does not possess general federal question jurisdiction. *See Crocker*, 37 Fed.Cl. at 197.

Even though plaintiff was seeking no relief beyond preservation of the status quo while its GAO protest was pending, an argument can be made that the final disjunctive phrase of amended section 1491(b) can be construed to extend the jurisdiction of the Court of Federal Claims. Such a construction, however, appears to be beyond the scope of the revised Tucker Act for several reasons.

In 1970 the Court of Appeals for the District Columbia Circuit held in *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, (D.C.Cir.1970), that the APA provided disappointed bidders with standing to seek redress in the district courts. In 1982 Congress enacted the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 133(a), 96 Stat. 25, 39–40 (1982) (codified at 28 U.S.C. § 1491(a)(3)), which granted the United States Claims Court, predecessor to the United States Court of Federal Claims, the power to grant equitable relief to disappointed bidders in situations where the contract had yet to be awarded. The Federal Circuit construed the Federal Courts Improvement Act as making the Scanwell doctrine applicable to the Claims Court in pre-award situations. *See CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1573 (Fed.Cir.1983).

---

**2.** Plaintiff, in fact, does maintain that the court always has possessed jurisdiction to entertain this type of dispute. *See* Transcript of Proceedings, *Ramcor Servs. Group, Inc. v. United States*, No. 98–152C, at 27 (Fed.Cl. Mar. 24, 1998) (hereinafter "Tr.").

Because the scope of amended section 1491(b) is ambiguous with respect to the manner in which it has broadened the court's jurisdiction,[3] resort must be made to the act's legislative history. *See Railroad Comm'n v. Chicago, B & Q R.R.,* 257 U.S. 563, 589, 42 S.Ct. 232, 66 L.Ed. 371 (1922); *DeCosta v. United States,* 987 F.2d 1556, 1558 (Fed.Cir. 1993). When referring to the ADRA, Senator Cohen stated:

The amendment [section 1491(b)] deals with the issue of bid protest jurisdiction in the Federal district court and the U.S. Court of Federal Claims. The amendment [section 1491(b)] will expand the bid protest jurisdiction of the Court of Federal Claims. It should be noted, however, that this amendment in no way expands the jurisdiction of the Court of Federal Claims beyond bid protests....

142 Cong. Rec. § 11848 (daily ed. Sept. 30.1996) (statement of Sen. Cohen). Senator Levin stated that "[e]ach court system [the Court of Federal Claims and the district courts] would exercise jurisdiction over the full range of bid protest cases previously subject to review in either system." *Id.* at S11849 (statement of Sen. Levin).

Although these statements are not dispositive on the issue of whether the phrase "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement" confers jurisdiction on the Court of Federal Claims to review an agency decisions to override a GAO stay, they counsel against a broad reading of the statute.

Currently, the Court of Federal Claims only has jurisdiction over bid protests which are filed before a contract award is made. My amendment provides for both pre- and post-award jurisdiction. The Federal district courts also have jurisdiction over bid protests. Prior to a 1969 Federal court decision, however, the Federal district courts had no jurisdiction over Federal contract awards. A Federal district court, in Scanwell Lab., Inc. versus Shaffer, held that a contractor can chal-

lenge a Federal contract award in Federal district court under the Administrative Procedures Act.

*Id.* at S11848 (statement of Sen. Cohen). This statement suggests that Congress apparently intended to provide the Court of Federal Claims with the entire scope of *Scanwell*—jurisdiction—both pre- and post-award. *Scanwell* is deemed to be a seminal decision because it permitted district courts to decide the merits of a dispute raised by a disappointed bidder. In the case at bar, however, plaintiff expressly asked the court to limit its review to the INS' decision to override the GAO stay. By doing so plaintiff precluded the court from considering the merits of the underlying dispute—whether it was proper for the INS to exclude plaintiff from the competitive range. In the circumstances presented by this case, the disjunctive phrase means the court cannot construe it to expand the court's jurisdiction beyond pre- and post-award bid protests.

This resolution does not preclude a disappointed offeror from using a violation of 31 U.S.C. § 3553(c), the statute providing for an administrative stay, as the basis for a proper suit in the Court of Federal Claims. Had plaintiff asked the court to review the merits of the award of the base support services contract, it could have based jurisdiction on a violation of section 3553(c). However, such a complaint would have opened the door to a thorough review of the entire dispute, including plaintiff's past performance. As defendant aptly noted at argument, by limiting the court's review to the INS' decision to override the stay, plaintiff effectively "lowered the bar," Transcript of Proceedings, *Ramcor Services Group, Inc. v. United States,* No. 98–152C, at 20 (Fed.Cl. Mar. 24, 1998), it faced with respect to obtaining a preliminary injunction. By asking the court to limit its review, plaintiff sought to have the court perform a task that it has not been authorized to undertake. Whether the INS acted in an arbitrary and capricious manner in its

---

**3.** In *CCL, Inc. v. United States,* 39 Fed.Cl. 780 (1997), Judge Bruggink grounded jurisdiction on the final disjunctive phrase of amended section 1491(b) in order to adjudicate a contractor's claim that a procurement required competitive bidding. The court noted that jurisdiction for this type of claim in the Federal Circuit had preexisted the 1996 amendments to the Tucker Act. *See* 39 Fed.Cl. at 789 n. 18.

decision to override the GAO stay is a question within the exclusive purview of the district courts. Because the court lacks jurisdiction over the underlying dispute, it also lacks jurisdiction to grant an EAJA award. *See Oliveira v. United States,* 827 F.2d 735, 742 (Fed.Cir.1987).

2. Assuming, *arguendo,* that the court were to have jurisdiction to entertain plaintiff's EAJA application, it would nonetheless deny the application.

 The EAJA was enacted as a specific waiver of sovereign immunity, *see Chiu v. United States,* 948 F.2d 711, 714 (Fed.Cir. 1991), "to eliminate legal expense as a barrier to challenges of unreasonable government action...." *Ellis v. United States,* 711 F.2d 1571, 1576 (Fed.Cir.1983). As is true for any waiver of sovereign immunity, the EAJA is to be construed strictly. *See Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). A prevailing litigant will be entitled to reasonable attorneys' fees and expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C.A. § 2412(d)(1)(A) (West.Supp.1998); *see also Commissioner, INS v. Jean,* 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). If plaintiff is deemed a prevailing party within the meaning of the statute, and meets the statutory eligibility requirements found at 28 U.S.C. § 2412(d)(2)(B), the burden shifts to defendant to demonstrate that its conduct—during both the agency and litigation phases of the dispute—was substantially justified. *See Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1465–66 (Fed.Cir.1986) (en banc). A trial court's determination will not be disturbed absent an abuse of discretion. *See Pierce v. Underwood,* 487 U.S. 552, 559, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

Defendant has not conceded plaintiff's statutory eligibility for an EAJA award, but does not raise a serious argument that plaintiff is not a prevailing party insofar as it incurred fees and expenses associated with obtaining the preliminary injunction. Congress has limited the availability of the EAJA to entities with a net worth of less than $7 million and fewer than 500 employees. *See* 28 U.S.C.A. § 2412(d)(2)(B). In its reply brief, plaintiff supplemented its documentation to support sufficiently its eligibility for an EAJA award. The court also permits plaintiff to cure the fact that its original application was not submitted under oath.

Defendant has also challenged the adequacy of plaintiff's billing records. The court does not find this line of argument persuasive. Plaintiff need only submit contemporaneous records detailing its attorneys' time and their billing rates. *See Naporano Iron & Metal Co. v. United States,* 825 F.2d 403, 404 (Fed.Cir.1987). This court has deemed an application acceptable when it documents "the dates on which work was performed, the attorney who performed the work, and the nature of the work performed." *PCI/RCI v. United States,* 37 Fed.Cl. 785, 792 (1997).

 Because plaintiff has complied with the statutory requirements that would entitle it to an award, the burden shifts to defendant to demonstrate that its conduct was substantially justified. The Federal Circuit has instructed trial courts to review "the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu,* 948 F.2d at 715; *see also Pierce,* 487 U.S. at 565, 108 S.Ct. 2541 (defining substantial justification as being a reasonable basis in both law and fact). The court's determination should be "independent from that of the merits phase" of the dispute. *Federal Election Comm'n v. Rose,* 806 F.2d 1081, 1090 (D.C.Cir.1986).

*Rose* also stands for the proposition that an arbitrary and capricious agency action does not in and of itself mandate an EAJA award. 806 F.2d at 1089–90. The rationale for this conclusion is evident: Congress did not intend for the EAJA to constitute a mandatory fee shifting device. *See Gavette,* 808 F.2d at 1465. In the case at bar, the court found that the INS' decision to override the GAO stay was arbitrary and capricious. Nonetheless, the court empathizes with the predicament in which the INS found itself. It was faced with a poorly drafted contract, a staff that was stretched

to the breaking point, and a contractor whose performance, although perhaps marginally acceptable, had significant problems.[4] Moreover, it is evident that, throughout the majority of the period during which plaintiff held the base support services contract, the INS viewed the situation as being a mere stop-gap. Thus, despite having twice extended plaintiff's contract, the INS never altered its position that it was essential to the BPSA that the successor contract be awarded as soon as practicable.

When it decided to override the GAO stay, the INS faced a significant problem in that there is scant case law to guide an agency in its efforts to substantiate a written finding. The INS did make an effort to comply with the terms of section 3553 in that it prepared a comprehensive written finding setting forth the reasons that buttressed its belief that there was an urgent and compelling need to override the GAO stay and it delivered these written findings to plaintiff. In its order granting a preliminary injunction, the court found that the reasons articulated by the INS were deficient and unable to support a claim of urgent and compelling need. However, the court also stated that in some cases the complaints about plaintiff's performance were "severe." In short, there were legitimate factual reasons supporting the INS' desire to override the GAO stay and allow the successor contract to be awarded immediately. Although these reasons did not rise to the level of an urgent and compelling need

to do so, the conduct of the INS did not constitute behavior lacking substantial justification.

The court also notes that the mere fact that plaintiff was willing to continue to perform the base support services contract is not dispositive. In *Dairy Maid Dairy, Inc. v. United States*, 837 F.Supp. 1370 (E.D.Va. 1993), the court faced a similar EAJA application. *Dairy Maid* involved both a pre-award and post-award protest, as well as an EAJA application. Plaintiff in that case filed a pre-award bid protest with the GAO. During the pendency of this protest, the United States Department of the Army (the "Army") awarded the contract at issue after providing plaintiff with a written finding. Plaintiff subsequently filed a post-award protest. Once again the Army chose to override the GAO, stay thereby allowing the successor contractor to continue to perform. However, in overriding the post-award protest stay, the Army failed to issue a written finding. The court found that the pre-award written finding issued by the Army was deficient for numerous reasons, including the failure to address plaintiff's continued willingness to perform the contract. 837 F.Supp. at 1378–79. Despite finding that the written finding was "a clear and prejudicial violation of the applicable law ... [and] was arbitrary, capricious and otherwise not in accordance with the law," *id.* at 1379, the court declined to find that the Government's position lacked substantial justification. *Id.* at 1383.[5] Con-

---

4. Defendant mischaracterizes the court's March 9, 1998 order granting a preliminary injunction by stating that "[t]he [c]ourt's March 9 order stated that it was undisputed that RAMCOR performed the contract adequately until December 15." Def's Br. filed Apr. 27, 1998, at 7 n. 4. The court made no such finding. The court noted in its March 9 order that defendant had argued that plaintiff's performance was acceptable until December 15. The court merely relied on defense counsel's own statements made during oral argument: "Ramcor's performance was acceptable up until the time that they found out that they were not in the competitive range. After that, they heard that determination their services declined drastically...." Tr. at 42 (Fed.Cl. Mar. 5, 1998).

5. In *Taylor Group, Inc. v. Johnson*, 915 F.Supp. 295 (M.D.Ala.1995), the court evaluated an EAJA application based on what it found to be an improper override of a GAO stay and, in doing

so, relied in part on *Dairy Maid* for the proposition that the General Service Administration's failure to support its written finding constituted conduct lacking substantial justification. Although it is correct that the *Dairy Maid* court found erroneous the Army's decision to overlook the willingness of the incumbent contractor to continue performance until the GAO rendered its decision, it was incorrect to conclude that the *Dairy Maid* court found such behavior sufficient to support an EAJA award. There the court noted that the incumbent contractor was available to continue performance, it declined to award fees on the pre-award protest due to the issuance of a written finding. The *Dairy Maid* court granted plaintiff's EAJA application only insofar as it concerned attorneys' fees and expenses related to plaintiff's post-award bid protest for which the Army failed to produce any written findings whatsoever.

versely, the court did find a lack of substantial justification with respect to the post-award protest because the Army had failed to provide the required written finding.[6]

With respect to the Government's litigation position in the case at bar, the court finds that it was substantially justified. As this court has stated previously, injunctions often place the Department of Justice in the difficult position of having to defend agency actions with little time to assess the merits of a dispute and to prepare a defense. *See Essex Electro Eng'rs, Inc. v. United States,* 4 Cl.Ct. 463, 469 (1984), *aff'd,* 757 F.2d 247 (Fed.Cir. 1985). Despite these inherent disadvantages, the court is not prepared to provide the Government with carte blanche to argue a feeble defense. Nonetheless, defendant has raised a credible and substantially justified defense, even absent the latitude that under the circumstances the court would be prepared to grant.

Defendant raised substantial questions concerning the quality of plaintiff's performance throughout the period for which it held the base support services contract. Moreover, the court acknowledges that if defendant had more time to evaluate the case, it might not have agreed so readily to place such reliance on plaintiff's alleged decline in performance after December 15, 1997. Defendant also elicited testimony evidencing the fact that the BPSA was facing significant problems that could only be alleviated by awarding the successor contract as soon as possible. Until such time the BPSA staff was stressed to the breaking point. Finally, defendant demonstrated that plaintiff only received the first two extensions because the INS had no choice but to grant them, as it was taking longer than expected to prepare the follow-on contract solicitation.

The substantial justification of defendant's litigation position is also bolstered by the fact that the override of a GAO stay was an issue of first impression in the Court of Federal Claims. This becomes particularly meaningful when one considers that courts have applied differing standards of review to an agency's decision to override a GAO stay. *See, e.g., DTH Management Group v. Kelso,* 844 F.Supp. 251, 255 (E.D.N.C.1993) (noting that courts. apply differing standards of review). Because the jurisprudence that does exist is unclear and inconsistent, the court cannot find defendant's post-hoc motion to dismiss lacking in substantial justification. A motion to dismiss for lack of subject matter jurisdiction can be raised at any point in the proceedings. *See Herbert v. United States,* 36 Fed.Cl. 299, 313 n. 8 (1996), although it is regrettable that defendant did so only after putting on its witness, whose testimony was key in establishing plaintiff's entitlement to a preliminary injunction.

## CONCLUSION

Accordingly, based on the foregoing, plaintiff's application for attorneys' fees and expenses pursuant to the EAJA is dismissed for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

---

6. The court recognizes that the *Dairy Maid* court also noted that there was little case law available to guide the Army vis-a-vis the sufficiency of its written finding. The court's own review of the existing case law indicates that what precedent does exist is both sparse and inconsistent. Thus, the court does not find that the decisional law that has issued in the five years after *Dairy Maid* has clarified the situation.